Smith, J.
The letter of Strippleman & Boyce to the defendants, dated March 1, 1853, accompanying and inclosing a bill of ladjng of the twenty-four bales of cotton, expressly advised them that they (Strippleman & Boyce) had written to Messrs. Archd. EE. Lowery & Go., 121 Front street, Mew York, inclosing a draft on their (defendants’) house, for $500, payable when the said cotton was sold. This was a clear and explicit appropriation of $500 of the proceeds of said cotton, when sold, to the use of A. H. Lowery & Co., payable upon the presentation of the said draft. The defendants obviously so regarded it at the time, for in their letter of the date of March 28, acknowledging the receipt of the bill of lading, they say: “Your draft in favor of A. H. Lowery & Co. shall be honored from the proceeds of the cotton,” &c., and the statement of the defendants, by their clerk, in the presence of one of the defendants, that “ it was all right, and that the draft would be *242 paid out of the proceeds of the cotton,” is to the same effect. The draft was not a bill of exchange requiring acceptance to bind the drawers, but a specific draft or order upon a particular fund. (Story on Bills of Exchange, 86.) It was equivalent to an assignment in equity to Lowery & Co., of so much of the proceeds of the cotton. (Morton v. Naylor, 1 Hill, 584.) So far as the defendants are concerned, in the sale of this cotton, they were bound to keep $500 of the proceeds to meet this draft. What their rights and liabilities would have been, if the draft had not been presented to them for payment, it is unnecessary to consider, for the draft .was, in fact, presented for payment before they had parted with the' funds. It may be that the plaintiff could not have maintained an action for the money without the production of the draft, or proof of its delivery and loss. The promise of the defendants to them, and to Strippleman & Boyce was, not to pay Lowery & Co. the money, but to pay the draft from the proceeds of the cotton. The money received from the sale of the cotton, to the extent of $500, they were bound, I think, to keep, as upon special deposit in their hands, for the benefit of the plaintiff, to. meet this draft. It was equitably their property, and was to be held for them till called for, by the production of the draft. (Bentley v. Taylor, 5 Hill.) Ho question could be made in respect to the correctness of this view of the draft; if it had, in fact, been inclosed in the letter of Strippleman & Boyce to Lowery & Co., of the date of March 1st, 1853. The case does'not contain the special findings of fact as required by section 267 of the Code, and we must, therefore, if need be, presume such facts found by the referee, as will sustain the judgment. (Grant v. Marsh, 22 N. Y., 323; Carman v. Pultz, 21 id., 547.) But if it was necessary so to find, I am inclined to think the referee might have found upon the evidence that the draft was delivered to Lowery & Co., at the date of the letter of Strippleman & Boyces to. them. (March 28, 1853.) Such was their clear intention, which equity would effectuate to protect the title of Lowery & Co., if necessary, certainly as against the defendants, who had full and distinct notice ot *243 such equity. They could not be allowed to appropriate the fund to their use, or to any other use, after such notice, and their positive agreement to hold the funds for Lowery & Co., certainly not to the payment of their own precedent debt against Strippleman & Boyce. The proceeds of this cotton, it appears from the account rendered by the defendants, was $825.28. Deducting from, this sum the draft of the consignees of August 8, 1853, for $353.04, accepted by the defendants, and they had $472.24 applicable to the payment of the plaintiff’s draft, and which upon no pretense, as shown in the case, could the defendants retain or refuse to apply upon plaintiff’s draft. But I think they are liable for the payment of the whole draft, upon the ground above stated, that, of the proceeds of the said twenty-four bales of cotton, $500 were, at the time of its receipt by the consignees, distinctly, in legal effect, set apart and appropriated for the use and benefit of the plaintiff, and that as soon as the money came to their hands from the sale of the said cotton, it was money had and received by them on special deposit for the use and benefit of the plaintiff, which they could not use, or appropriate, or apply to any other purpose. They were bound to keep it to meet this draft, which they were informed had been drawn upon it, in favor of the plaintiff. If, instead of sending cotton to the defend-' ants for sale, part of the proceeds to be paid to the plaintiff, Strippleman & Boyce had sent to them $500 to be paid to plaintiff, to be applied on their debt to him, on production of an order sent for that purpose; can it be doubted that the money would be received and held in trust for the plaintiff, at least in equity, and that he might affirm the. trust and demand the money if the draft did not come to hand or was lost. In this case, the money was to be applied upon the debt of Strippleman & Boyce to the plaintiff. In the letter to Lowery & Co., of March 1st, they said: “We inclose, draft on J. Steward & Co., for $500, which you will please credit on our note.” Plaintiff then held their note for $1,476.50, due February 6th previously. The appropriation of the fund was complete as soon as the cotton came to the defendants’ hands. They were *244 the trustees of the cotton and its proceeds for the plaintiff’s benefit, to the amount of $500. The draft or order was necessary only for a voucher. They were not bound to accept the draft; acceptance was entirely unnecessary.
I think the judgment below should be affirmed.
Denio, Ch. J., Davies, Sutherland and Gould, Js., concurring,
Judgment affirmed.